# EXHIBIT E

```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF NEW JERSEY

CELGENE CORPORATION,              .
                                  .
        Plaintiff,                .
                                  .  Case No. 17-cv-03387
vs.                               .
                                  .  Newark, New Jersey
HETERO LABS LIMITED, et al.,      .  May 11, 2018
                                  .
        Defendants.               .
                                  .



                      TRANSCRIPT OF HEARING
            BEFORE THE HONORABLE MICHAEL A. HAMMER
                UNITED STATES MAGISTRATE JUDGE


APPEARANCES:

 For the Plaintiff:      WILLIAM C. BATON, ESQ.
                         Saul Ewing Arnstein & Lehr LLP
                         One Riverfront Plaza
                         1037 Raymond Blvd.
                         Suite 1520
                         Newark, NJ 07102
                         (973) 286-6700
                         wbaton@saul.com

                         FRANK CHARLES CALVOSA, ESQ.
                         Quinn Emanuel Urquhart & Sullivan LLP
                         51 Madison Avenue
                         22nd Floor
                         New York, NY 10010
                         (212) 849-7569
                         frankcalvosa@quinnemanuel.com

Audio Operator:

Transcription Service:   KING TRANSCRIPTION SERVICES
                         3 South Corporate Drive, Suite 203
                         Riverdale, NJ  07457
                         (973) 237-6080


Proceedings recorded by electronic sound recording; transcript
produced by transcription service.
```

```
 1   (APPEARANCES continued)

 2   For the Plaintiff:      F. DOMINIC CERRITO, ESQ.
                             Quinn Emanuel Urquhart & Sullivan LLP
 3                           51 Madison Avenue
                             22nd Floor
 4                           New York, NY 10010
                             (212) 849-7000
 5                           Nickcerrito@quinnemanuel.com

 6                           MATTHEW J. HERTKO, ESQ.
                             Jones Day
 7                           77 West Wacker
                             Chicago, Illinois  60601-1692
 8                           (312) 269-1581
                             Mhertko@jonesday.com
 9
     For the Defendants      MELISSA E. FLAX, ESQ.
10   Hetero Labs            Carella Byrne Cecchi Olstein Brody &
     Limited, Hetero         Agnello, PC
11   Labs Limited            5 Becker Farm Road
     Unit-V, Hetero          Roseland, NJ 07068
12   Drugs Limited,          (973) 994-1700
     Hetero USA, Inc.:       mflax@carellabyrne.com
13
                             ANDREW M. ALUL, ESQ.
14                           Taft Stettinius & Hollister LLP
                             111 East Wacker
15                           Suite 2800
                             Chicago, IL 60601
16                           (312) 836-4135
                             Aalul@taftlaw.com
17
     For the Defendant       ROBERT JOSEPH FETTWEIS, ESQ.
18   Breckenridge           Fleming Ruvoldt PLLC
     Pharmaceutical,         250 Moonachie Road
19   Inc.:                   Suite 501
                             Moonachie, NJ 07074
20                           (201) 518-7878
                             rfettweis@flemingruvoldt.com
21
                             C. KYLE MUSGROVE, ESQ.
22                           Haynes and Boone
                             800 17th Street NW
23                           Suite 500
                             Washington, D.C. 20006
24                           (202) 654-4502
                             Kyle.musgrove@haynesboone.com
25
```

```
 1   (APPEARANCES continued)

 2   For the Defendant        ARNOLD B. CALMANN, ESQ.
     Mylan                    Saiber LLC
 3   Pharmaceuticals,         One Gateway Center
     Inc.:                    10th Floor
 4                            Newark, NJ 07102-5311
                              (973) 622-3333
 5                            Abc@saiber.com

 6                            ELHAM FIROUZI STEINER, ESQ.
                              Wilson Sonsini Goodrich & Rosati
 7                            12235 El Camino Real
                              San Diego, CA 92130
 8                            (858) 350-2246

 9   For the Defendant        ELEONORE OFOSU-ANTWI, ESQ.
     Teva:                    Walsh Pizzi O'Reilly Falanga LLP
10                            One Riverfront Plaza
                              1037 Raymond Blvd
11                            Suite 600
                              Newark, NJ 07102
12                            (973) 757-1022
                              Eofosuantwi@walsh.law
13
                              CHRISTOPHER T. JAGOE, ESQ.
14                            Kirkland & Ellis LLP
                              601 Lexington Avenue
15                            New York, NY 10022
                              (212) 446-4945
16                            Christopher.jagoe@kirkland.com

17   For the Defendants       GURPREET SINGH WALIA, ESQ.
     Aurobindo Pharma         FisherBroyles, LLP
18   Limited, Aurolife        100 Duffy Ave.
     Pharma LLC, Eugia        Suite 510
19   Pharma Specialties       Hicksville, NY 11801
     Limited:                 (929) 429-5721
20                            gurpreet.walia@fisherbroyles.com

21                            JOSEPH SCHRAMM, III
                              FisherBroyles LLP
22                            100 Overlook Center
                              2nd Floor
23                            Princeton, NJ 08540
                              (856) 733-0220
24                            Joseph.Schramm@fisherbroyles.com

25
```

```
 1                    (Commencement of proceedings at 10:09 A.M.)

 2

 3            THE COURT:  All right.  So we are on the record in

 4    matter of Celgene Corporation versus Hetero Labs Limited and

 5    Celgene Corporation versus Par Pharmaceutical.  The Hetero

 6    Labs Limited matter is Civil No. 17-3387.  The Par

 7    Pharmaceutical matter is 17-3159.

 8            And let me take appearances of counsel, please,

 9    beginning with Celgene.

10            MR. BATON:  Good morning, Your Honor, Bill Baton of

11    Saul Ewing Arnstein & Lehr, New Jersey counsel for Celgene.

12            MR. CERRITO:  Good morning, Your Honor.  Nick

13    Cerrito and Frank Calvosa, Quinn Emanuel Urquhart & Sullivan,

14    on behalf of Celgene.

15            MR. HERTKO:  Good morning, Your Honor, Matt Hertko

16    from Jones Day also on behalf of Celgene.

17            THE COURT:  All right.  Did we miss somebody?  No?

18    Okay.

19            Ms. Flax, how are you?

20            MR. FLAX:  Good morning, Your Honor, Melissa Flax

21    from Carella Byrne on behalf of Apotex and Hetero.  And I'll

22    let my cocounsel introduce themselves.

23            MR. ALUL:  Good morning, Your Honor, Andrew Alul

24    from Taft Stettinius & Hollister in Chicago on behalf of the

25    Apotex and Hetero defendants.
```

```
 1              THE COURT:  All right.  Good morning.

 2              MR. FETTWEIS:  Good morning, Your Honor.  Robert J.

 3  Fettweis, Fleming Ruvoldt, local counsel for Breckenridge

 4  Pharmaceuticals.  I'm joined by Kyle Musgrove, patent

 5  counsel, Haynes and Boone in Washington.

 6              THE COURT:  All right.  Good to see you,

 7  Mr. Fettweis.

 8              Mr. Calmann.

 9              MR. CALMANN:  Good morning, Your Honor.  Arnold

10  Calmann for Mylan.  And with me is my cocounsel Ellie Steiner

11  from Wilson Sonsini in California.

12              THE COURT:  Ms. Steiner, how are you?

13              MR. CALMANN:  Thank you, Your Honor.

14              MS. OFOSU-ANTWI:  Good morning, Your Honor.

15  Eleonore Ofosu-Antwi from the Walsh firm.  And with me is my

16  cocounsel Chris Jagoe from Kirkland & Ellis for Teva.

17              THE COURT:  Good to see you again, counsel.

18              MR. WALIA:  Good morning, Your Honor.  This is

19  Gurpreet Walia.  And with me is cocounsel Joe Schramm for --

20  from FisherBroyles for Aurobindo --

21              THE COURT:  All right.  Good morning.  All right.

22  So what I'm looking at the most -- I think the most currently

23  substantive correspondence that I have -- and if I'm wrong,

24  please tell me -- is the Docket Entry 164.  This is the

25  Celgene Hetero Labs Limited, April 27th letter.  If I recall,
```

```
 1   you folks had proposed and I had agreed in both matters to

 2   extend the deadline to serve invalidity contentions.

 3              MR. CERRITO:  Your Honor, I think they said --

 4              THE COURT:  Go ahead.

 5              MR. CERRITO:  The April 27th letter dealt with only

 6   one particular --

 7              THE COURT:  Right.  That was just Hetero.  I'm

 8   looking at the March 28th letter and then the April 27th

 9   letter.  The March 28th letter was both Par and Hetero.  The

10   April 27th letter, Docket Entry 164, is just Hetero.

11              MR. CERRITO:  Right.  And it dealt -- it only

12   dealt -- it wasn't -- the 164 deals only with a schedule

13   pertaining to Mylan.

14              THE COURT:  Right.

15              MR. CERRITO:  With regard to certain discovery

16   dates there.

17              THE COURT:  Right.  So why don't we do it this way.

18   Why don't I start with Celgene and why don't you bring me up

19   to speed on where we are in both matters where they --

20   because I don't think I've had a conference in this case

21   previously.  Right?  Okay.

22              So why don't you bring me up to speed on where we

23   are with both matters, where they are on the same track,

24   where they diverge, and help me just sort of generally get my

25   bearings.
```

 1            MR. CERRITO:  To answer that, I guess the last

 2   question first, they're basically on the same track with the

 3   minor exception of the Mylan venue-related discovery.  As

 4   Your Honor knows that's a sort of running -- a separate

 5   isolated issue with Mylan only.

 6            Just to get Your Honor up to speed a little bit,

 7   the case was filed back in 2017.  Initial disclosures in this

 8   case were exchanged in October.  There are --

 9            THE COURT:  I'm sorry.  You say "this case."  We're

10   on -- you're talking about both cases?

11            MR. CERRITO:  Yeah, they were done simultaneously.

12            THE COURT:  That's fine.  Okay.  So -- so go ahead.

13            MR. CERRITO:  Everything runs together, I guess,

14   Your Honor, essentially.

15            THE COURT:  Okay.

16            MR. CERRITO:  There's currently six defendants.

17   There are seven filed, but one defendant decided to go a

18   different route.  But there are six active defendants.  The

19   number of patents asserted here are between four and nine

20   depending on who certified as to what.  So two parties have

21   four.  The remainder of the other four parties have nine

22   patents.

23            The responsive contentions were exchanged back in

24   April 20th -- not an insubstantial endeavor on behalf of,

25   certainly, Celgene.  Nearly a thousand pages were submitted

```
 1   there.

 2              As a result, now that, you know, the issues have

 3   been framed with contentions, we are now undertaking some

 4   discovery.  There has been some letters back and forth

 5   between parties concerning certain of the discovery.  We

 6   think that there is one issue that is ripe for a decision at

 7   this point.  Of course, we'd have to file a motion or ask

 8   Your Honor for leave to file a motion.  We're deciding how to

 9   approach that, so we may be --

10              THE COURT:  Okay.

11              MR. CERRITO:  -- approaching Your Honor in the near

12   future.  It's a sort of isolated issue.

13              THE COURT:  With respect to both cases or just one

14   or the other?

15              MR. CERRITO:  I -- it'd be both.

16              THE COURT:  Okay.

17              MR. CERRITO:  Yes, Your Honor.  I apologize.  I

18   will -- unless I guess I say --

19              THE COURT:  Unless to the contrary.

20              MR. CERRITO:  I just don't think of them as

21   separate cases, so I apologize.

22              THE COURT:  That's fine.  And I still don't know

23   what I think of them, so....  So let's try and figure all

24   that out.

25              MR. CERRITO:  Fair enough.  Fair enough.  So
```

1   we're -- again some letters have been exchanged, but it

2   doesn't really be ripe on those issues.

3          We did receive some correspondence late last night

4   concerning defendants' desire to set some dates into the

5   schedule.  We received that last night about 9 o'clock.  We

6   have not, obviously, had a chance to discuss that with our

7   client.

8          We're happy to discuss that with defendants and get

9   back to Your Honor with a recommendation or hopefully an

10  agreement.

11         THE COURT:  Yeah, you actually presage my next

12  question, which is I know that there were -- well, actually I

13  don't know.  Whether we're operating under a viable pretrial

14  scheduling order at this point.

15         MR. CERRITO:  Your Honor, I guess I don't presume

16  to understand what you mean by one --

17         THE COURT:  In other words.  Go ahead.

18         MR. ALUL:  I was just going to say, Your Honor, I

19  don't believe we are.  We're operating on a truncated

20  schedule at best that basically leaves a number of dates open

21  after -- after the claim construction schedule.  And we're

22  almost a year into this case -- I believe we're 10 months

23  into this case.  We're eight months into fact discovery.  I

24  generally agree with what Mr. Cerrito's synopsis of what's

25  happened in this case, except that I believe we've engaged in

1   some very considerable fact discovery.  We served our Rule 34

2   requests, Rule 33 interrogatories.  We've gotten responses

3   back from them.  We're working through some deficiencies with

4   them.  We've served our invalidity contentions, our

5   noninfringement contentions.  Hundreds of pages.  They served

6   their response and their infringement contentions.

7           THE COURT:  Right.

8           MR. ALUL:  Both sides have exchanged hundreds, if

9   not thousands, of pages of prior art and other documentary

10  evidence in connection with those contentions.  Really, the

11  only thing we have left to do is take fact deps.  And I

12  believe Celgene has yet to serve Rule 34 requests for

13  documents.  They've already served Rule 34 requests for

14  samples.  We've produced those.

15          So we've had significant fact discovery underway

16  here.  And at least on the defense side, we believe we need a

17  schedule.

18          MR. CERRITO:  Well, Your Honor, I -- had most of

19  it, right up until part where he said --

20          THE COURT:  No, I didn't hear a lot of

21  disagreement.  But, right.

22          MR. CERRITO:  Well -- said we're basically done.  I

23  mean, we basic just started is where we are.

24          Once contentions are served to the parties --

25          THE COURT:  This is going to get interesting.

1    Okay.

2              MR. CERRITO:  I mean, that's when you know what

3    your case is.  Right?  They served their contentions.  We

4    responded.  They did hundreds.  We did thousands in response.

5              And now we know where -- that happened April 20th,

6    so couple of weeks ago, basically, we framed the case.

7              Look, we have no problem talking about a schedule.

8    We'll do that offline and present to Your Honor.

9              THE COURT:  Yeah.

10             MR. CERRITO:  Unfortunately, we were sort of

11   sandbagged by their attempt to rush into court with a

12   schedule that never raising it --

13             THE COURT:  I'm sure no sandbagging was intended.

14             But, look, why don't we do it this way, right, and

15   approach it practically.  How about if I give you folks two

16   weeks -- and if this isn't enough time because we have -- we

17   have multiple parties, tell me.  I'll be happy to work with

18   you -- to meet and confer and try to get me a schedule.  And

19   actually, shame on me, I probably should have done that in

20   the run-up to this conference.  But no harm, no foul.

21             So if two weeks is enough time.

22             And then if you folks, as you most certainly will,

23   disagree on this part or that part of the schedule, you'll

24   tell me in that submission what your respective disagreement

25   is, and each of you can please concisely tell me the basis

 1   for your position as to that aspect of the schedule on which

 2   you disagree.

 3            MR. CERRITO:  Yes, Your Honor.

 4            MR. ALUL:  Happy to do that, Your Honor.

 5            I'd just like to push back on this assertion

 6   somehow we sandbagged them.  We asked them on Monday actually

 7   for -- then I'll leave it alone.

 8            THE COURT:  You're arguing when you're ahead.

 9            MR. ALUL:  I'm sorry?

10            THE COURT:  You're arguing while you're ahead.  No,

11   I didn't infer sandbagging.

12            MR. ALUL:  Thank you.  But we have a proposed

13   schedule here with us, but we're happy to meet and confer

14   with them.  Yeah.

15            THE COURT:  Yes, please do that.  Look, if nothing

16   else, I don't expect you folks -- just experience teaches me

17   that you won't agree on the entirety of the schedule,

18   especially if there's at least some disagreement over what's

19   been accomplished, but at least in doing this -- look, here's

20   the truth about being a magistrate judge in complex civil

21   litigation.  Okay?  Unless you're Stanley Chesler, who's

22   obviously no longer a magistrate judge and hasn't been in a

23   while.  But half the time, you're just trying to figure out

24   where the disagreement lies.  Okay?  And you're doing it in,

25   you know, with 10 other conferences going on that day, a

 1   settlement conference that may or may not actually settle.

 2   You don't know because you're only in hour 3, and you still

 3   don't know exactly where the parties are.

 4            So the best thing can you do by meeting and

 5   conferring, if you -- look, in a perfect world, you'll agree

 6   on everything.  But in a less than perfect world, at least

 7   you'll tell me where you disagree and why, and that'll let me

 8   get through it a lot more quickly and get you folks back an

 9   order that reconciles the issues.

10            MR. ALUL:  Thank Your Honor.

11            THE COURT:  All right.  What else you got?

12            MR. CERRITO:  Nothing, Your Honor.

13            THE COURT:  Okay.

14            DEFENSE ATTORNEY:  Your Honor, the only question I

15   have is I know that this is unusual in New Jersey, but given

16   the 30-month stay date, would it be possible to talk to Judge

17   Salas about getting a trial date.  That we had originally

18   proposed that back in front of Judge -- the other magistrate

19   judge in January.

20            THE COURT:  And I'm going to guess, did he say in a

21   sort of skeptical tone, you can ask?

22            DEFENSE ATTORNEY:  I think we actually -- my record

23   of -- is that he said he would talk to her.  In fact,

24   Your Honor, if you look -- my recollection at that time was

25   that he said he would check with Judge Salas, but, obviously,

```
 1   if we had a trial date, then it's much easier to work

 2   backwards.  If that's certainly not something that's done

 3   here, we're fine with that.  But --

 4           THE COURT:  I can -- maybe I'm betraying just sheer

 5   ignorance.  I've not heard of that practice before.

 6           Mr. Cerrito, do you want to --

 7           MR. CERRITO:  I've never heard of that either,

 8   Your Honor.  And just so we're on --

 9           THE COURT:  I'm not saying it doesn't happen.  I'm

10   just saying I haven't heard of that previously.

11           MR. CERRITO:  I've had, as Your Honor knows, many

12   cases before Judge Salas.  I've never heard that.

13           But the 30-month stay in this case is more than two

14   years away.  This was actually a 42-month stay because of the

15   "date certain" filing.  So it's August 2020.  I don't know

16   that we can talk about trial dates two and a half years from

17   now.

18           MR. ALUL:  Just to clarify, Your Honor, in the

19   Rule 16 transcript, Judge Dickson did say that he would check

20   with Judge Salas.

21           THE COURT:  I'm not doubting.

22           MR. ALUL:  Yeah.

23           THE COURT:  Yeah, I don't doubt that.

24           MR. ALUL:  But we're certainly willing to follow

25   whatever the Court's predilection is on this.
```

1        THE COURT:  Here's what I propose you do.  Hold on.

2   Let me see if I can find it in the transcript.  I was going

3   to suggest first submitting a letter, but if it's already in

4   the transcript, I'm not sure that that's entirely necessary.

5        MR. ALUL:  Yes, it's -- Your Honor.  We have some

6   citations.  It's actually in the scheduling order that's in

7   place.  It's Footnote 2 in the calendar attached to the

8   schedule.  And you'll see hearing transcript, October 25th,

9   2017, at 14:24 to 16:5, and then 49 --

10       THE COURT:  I'm sorry.  Wait.  Hold on.  Let me

11  just catch up with you.

12       MR. ALUL:  Sure.

13       THE COURT:  October -- tell me that again.  What's

14  the date?

15       MR. ALUL:  Sure.  It's October 25th, 2017, is the

16  transcript of the Rule 16.

17       THE COURT OFFICER:  What page?

18       MR. ALUL:  Page 14 to 16, and page 49, lines 4

19  through 19.  I actually have it on my phone.  I don't have a

20  hard copy of it here with me.

21       THE COURT:  It's all right.  I've got it here -- or

22  I will.

23       MR. CERRITO:  What may be missing from that written

24  word is the skepticism Judge Dickson showed when that

25  statement was made.

 1            But regardless, Your Honor, we're talking about a

 2   case --

 3            THE COURT:  I'll raise the issue.  I mean --

 4            MR. CERRITO:  I would encourage you to talk to

 5   Judge Dickson.

 6            THE COURT:  J, did you make a note of those page --

 7   what are the pages again?  I'm sorry.

 8            MR. ALUL:  Sure.  They 14 to 16 and 49.

 9            THE COURT:  Okay.  All right.

10            MR. CERRITO:  I think it's, quite frankly, a little

11   unproductive to do this piecemeal and present to Your Honor a

12   full picture.

13            THE COURT:  Here's the other problem -- right? --

14   realistically with predicting a trial schedule or a trial

15   date two years out.  As you folks know, and certainly Judge

16   Salas is eminently sensitive to the 30-month stay issue.  But

17   we also operate -- or she operates as a district judge in a

18   world where criminal cases get priority constitutionally, and

19   trying to predict exactly an open date, you know, in a case

20   for trial purposes is at this point extraordinarily difficult

21   and speculative.

22            But I'll take a look at the transcript, and I'll

23   talk about it.

24            MR. CERRITO:  I guess I would just add, if we're

25   going to go down this road, you know, obviously, this Court's

1   well aware of Local Rule 2.4 about Markman scheduling and

2   what expert reports follow therefrom.  We obviously agree

3   with the rule.  We think that you should have Markman ruling

4   before you end up doing expert reports, and maybe more so in

5   this case than in others, since there are so many defendants.

6           THE COURT:  Right.

7           MR. CERRITO:  There's going to be -- and I'm

8   guessing, between all the parties -- remember, I have to show

9   infringement against all of them.  I mean, the different

10  experts against all of them.  There could easily be 15 to 20

11  experts in this case.  To rush with the schedule, to work

12  backwards to set a date when we don't have a Markman may

13  require us to do two sets of expert reports, may require

14  amended contentions, may require all the things that Rule 2.4

15  was set up to avoid.

16          THE COURT:  Right.  I'll say this outset, I'd have

17  some real concerns about locking in a schedule now, just

18  getting sort of up to speed on the case.

19          MR. ALUL:  Understood, Your Honor.  I -- again, we

20  just --

21          THE COURT:  I understand the idea and the purpose

22  behind it.

23          MR. ALUL:  We didn't -- the issue for us is,

24  Your Honor, we're in this case.  We've been in this case now

25  for almost a year or eight months in the fact discovery.

1          THE COURT:  Right.

2          MR. ALUL:  We've hired experts who -- some of whom

3    are physicians, some of whom are university professors who

4    have very busy schedules who are calling me every month

5    saying, when are our services going to be needed?

6          We have corporate clients who for budgetary reasons

7    need to know when big litigation expenditures are going to

8    take place in this case.

9          THE COURT:  Yeah, well, I have to be honest, on

10   that one, your corporate clients are use -- especially in

11   these sort of cases, this is probably something that they've

12   grown accustomed or adapted to by now.

13         MR. ALUL:  Understood.  Okay.  Fair enough,

14   Your Honor.

15         I guess my point is, though, we've been in this

16   case for a year and a half now.  We've hired experts --

17   for -- I'm sorry -- for a year now.  We're eight months into

18   fact discovery.  We know --

19         THE COURT:  He was about to get up and object to

20   year and a half.

21     (Simultaneous conversation)

22         THE COURT:  And you even see him out of the corner

23   of your eyes, so I would think --

24     (Simultaneous conversation)

25         MR. CERRITO:  See, I don't even have to say

 1 | anything.  I just have to look like I'm going to stand up.

 2 |          MR. ALUL:  So, you know, again, I find it -- I've

 3 | practiced before this Court for years now, and I find it

 4 | unusual that we're almost a year into this case, and we don't

 5 | have a complete schedule; set aside the trial date issue.

 6 | And I think we, on the defense side, would find it very

 7 | helpful if we could lock in some days.

 8 |          THE COURT:  Well, look, at a minimum, here's what I

 9 | can promise you.  By the end of -- you folks are going to get

10 | me the joint letter by when?  We said in two weeks.  Right?

11 |          MR. ALUL:  Sure.

12 |          THE COURT:  So that's the 25th.  By the end of the

13 | month, we're going to have a schedule.

14 |          MR. ALUL:  Great.  Thank you, Your Honor.

15 |          THE COURT:  It may not have a trial date on it.

16 |          MR. ALUL:  Sure.

17 |          THE COURT:  But we're going to have a schedule.

18 |          MR. ALUL:  Understood.

19 |          THE COURT:  What else?  Nothing?

20 |          MR. ALUL:  Your Honor, there was one last issue

21 | that we were going to bring up for Apotex and Hetero, and

22 | we'd be happy to submit a formal letter application on this

23 | particular issue, if Your Honor would like.

24 |          THE COURT:  Okay.

25 |          MR. ALUL:  There are, as Mr. Cerrito mentioned,

 1   nine patents in this case for, I guess, four of the

 2   defendant, including both of my clients.  One of the patents

 3   is a formulation patent.  It's a very specific formulation

 4   patent.  It claims specific capsules of pomalidomide with

 5   certain ingredients and certain amounts, weighing certain

 6   amounts and having certain sizes.  It's a very, very narrow

 7   patent.  And my clients have designed around it.  And we

 8   don't infringe.  In fact, a few weeks ago, we got Celgene's

 9   infringement contentions, which we're still digesting, but

10   they actually concede no literal infringement.  They only

11   assert infringement under the doctrine of equivalents.  And

12   there, Your Honor, the case law's pretty crystal-clear,

13   Celgene's estopped from asserting infringement of the

14   doctrine of equivalents for two independent reasons: because

15   of how they narrowed their claims during claim construction

16   to avoid the prior art, and because of what they told the

17   Patent Office about their claims to distinguish them from the

18   prior art.  And under Federal Circuit case law, Your Honor,

19   prosecution history estoppel is a legal issue for the Court

20   to decide via pretrial summary judgment motion.  So --

21               THE COURT:  Okay.  So -- I'm sorry -- wait.  So

22   tell me what the request is.

23               MR. ALUL:  So the request is -- the request is for

24   leave to file for summary judgment on this one patent.  And

25   we'd be happy to present it as a letter application to

1    Your Honor.

2            THE COURT:  Yeah, you're probably going to need to,

3    because that's going to be much more Judge Salas's call than

4    mine, but go ahead, Mr. Cerrito.

5            MR. ALUL:  Sure.

6            MR. CERRITO:  I mean, besides disagreeing with

7    everything he just said, and there is a legal issue --

8            THE COURT:  I imagine on the law, you did.  But --

9            MR. CERRITO:  Yeah, and I do -- and also it's an

10   issue underlying --

11           THE COURT:  Do you concede that there's no literal

12   infringement, though?

13           MR. CERRITO:  I believe that is what we said in

14   our -- in the papers.

15           THE COURT:  Okay.  Okay.

16           MR. CERRITO:  But the underlying question of law

17   there, of course, is based on facts.  And so, again -- I know

18   he's been here a long time, I've been here a long time, we've

19   all been here a long time, and rarely do we see summary

20   judgment motions for all the reasons that judges typically

21   don't allow them, because they waste time.  On the one hand,

22   they want to move forward quickly and do all this stuff, but

23   on the other hand, they want to distract us.

24           THE COURT:  Well, they're not proposing to stay

25   discovery.  I mean, you're not proposing to stay discovery.

1            MR. ALUL:  Oh, no.

2            THE COURT:  Right.  That's not happening.

3            MR. CERRITO:  But when it's six against -- when

4    it's six against one -- easy for them to do that, because

5    they can all do the work.  I have to do the work against all

6    of them.  They can choose which one of them does the work.

7            So, you know, they can make their application, I

8    guess, Your Honor, but obviously, we would -- we're going to

9    oppose.

10            THE COURT:  Well, I assume you're going to want to

11    be heard on that?  So you folks will send me a joint letter?

12    Unless you don't want to be heard.

13            MR. ALUL:  Sure.

14            MR. CERRITO:  I mean, I want to be heard to oppose,

15    yes.

16            THE COURT:  Yeah, to oppose him, leave to make the

17    motion.  I assume that you're -- obviously you want to -- you

18    want to be heard on opposing any motion, if it's allowed.

19            MR. CERRITO:  Whatever -- yes, Your Honor.

20            THE COURT:  All right.  So what I'll do --

21            MR. CERRITO:  Well, if a motion will be allowed.

22            MR. BATON:  Yeah, Your Honor, it's Bill Baton.

23    Just to be clear, I think what you're asking is he -- they

24    want to put in a letter --

25            THE COURT:  Yeah.

|Hearing
|17-cv-03387, May 11, 2018                                    23

1            MR. BATON:  -- requesting leave to file a motion.

2            THE COURT:  And I want to know -- your side why

3    that's a bad idea.

4            MR. BATON:  Yes.  Right.

5            MR. CERRITO:  Yes, Your Honor.

6            MR. BATON:  But he's just not going to file a

7    motion.

8            THE COURT:  No.

9            MR. BATON:  Right.  Correct.

10            THE COURT:  All right.  So why don't you folks get

11   that to me also by the 25th.

12            MR. ALUL:  Thank Your Honor.

13            THE COURT:  Okay.  Okay.  Anything else?  All

14   right.  We're adjourned.

15            (Conclusion of proceedings at 10:29 A.M.)

16

17

18

19

20

21

22

23

24

25

|Hearing
|17-cv-03387, May 11, 2018                                                    24
|Certification

1                              Certification

2          I, SARA L. KERN, Transcriptionist, do hereby certify

3     that the 24 pages contained herein constitute a full, true,

4     and accurate transcript from the official electronic

5     recording of the proceedings had in the above-entitled

6     matter; that research was performed on the spelling of proper

7     names and utilizing the information provided, but that in

8     many cases the spellings were educated guesses; that the

9     transcript was prepared by me or under my direction and was

10    done to the best of my skill and ability.

11         I further certify that I am in no way related to any of

12    the parties hereto nor am I in any way interested in the

13    outcome hereof.

14

15

16

17

18    S/ *Sara L. Kern*                    17th of May, 2018

19    _____    _____
      Signature of Approved Transcriber              Date

20

21
      Sara L. Kern, CET**D-338
22    King Transcription Services
      3 South Corporate Drive, Suite 203
23    Riverdale, NJ  07457
      (973) 237-6080

24

25